IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: BRITTWOOD CREEK, LLC, ) <br> ) <br> Debtor. ) <br> _____ ) <br> ) <br> ARROW ROAD CONSTRUCTION CO., ) <br> ) <br> Appellant, ) <br> ) <br> v. ) <br> ) <br> BRIDGEVIEW BANK GROUP ) <br> ) <br> Appellee. ) | 10 C 6295 <br><br> Hon. Charles R. Norgle <br><br> On Appeal from the United States Bankruptcy Court for the Northern District of Illinois <br><br> Bankruptcy Case 10 B 15753 |

## MEMORANDUM OPINION

CHARLES R. NORGLE, District Judge

Before the Court is Arrow Road Construction Company's ("Arrow Road") appeal of the United States Bankruptcy Court for the Northern District of Illinois's August 12, 2010 Order Annulling the Automatic Stay As To Bridgeview Bank Group, *Nunc Pro Tunc* To May 24, 2010 (the "Annulment Order"). For the following reasons, the decision of the Bankruptcy Court is affirmed.

### I. BACKGROUND

**A. Facts**

Brittwood Creek, LLC (the "Debtor") is a single purpose entity that owned a residential real estate development project in Oak Brook, Illinois (the "Property"). The Property was developed with approximately $25 million in loans advanced by Appellee

1

Bridgeview Bank Group (the "Bank"). The Property and its proceeds were pledged to the Bank as collateral for the Debtor's obligations under a Construction Loan Agreement. The Debtor defaulted under the Construction Loan Agreement by, among other things, failing to make scheduled payments to the Bank.

On or about October 29, 2009, the Bank filed a foreclosure action, <u>Bridgeview Bank Group v. Brittwood Creek, LLC, et al.</u>, No. 2009 CH 5173, in the Eighteenth Judicial Circuit, DuPage County (the "Foreclosure Action") and subsequently recorded a *lis pendens* on the Property. On December 14, 2009, after publication of the *lis pendens*, Arrow Road recorded a mechanic's lien against the Property for $81,723.24 (the "Lien"). The Lien stated that Arrow Road last performed work on the Property – roadway construction and asphalt paving – on December 1, 2009, over a month after the Bank filed the Foreclosure Action.

Judgment of Foreclosure was entered on behalf of the Bank on March 8, 2010. However, just before the sheriff's sale, the Debtor electronically filed a voluntary petition under the Bankruptcy Code (the "Code"). On April 9, 2010, at 2:13 pm, Debtor's counsel filed a petition under Chapter 7 of the Code (the "Chapter 7 Case"). The Bankruptcy Court found that Debtor's counsel, intending to file under Chapter 11 of the Code, "inadvertently and by mistake" electronically filed the petition under Chapter 7. Tr. of Proceedings before the Hon. John H. Squires 6 [hereinafter Bankr. Tr.]. Upon realizing the mistake, Debtor's counsel contacted the Bankruptcy Clerk but was advised that the Chapter 7 petition could not be withdrawn. The Chapter 7 Case was assigned to the Honorable John H. Squires, No. 10-15753. Forty-two minutes later, at 2:55 pm, Debtor's counsel filed another petition, this time under Chapter 11 (the "Chapter 11

Case"). The Chapter 11 Case was assigned to the Honorable Jacqueline P. Cox, No. 10-15776.

The Bankruptcy Clerk mailed Notice of the Chapter 7 Case to the Debtor's creditors on April 14, 2009, and Notice of the Chapter 11 Case to Debtor's creditors on April 15, 2009. Arrow Road received both notices. With the exception of removing the Chapter 7 Trustee from the Chapter 11 Notice, the two Notices were the same.

While no action was taken in the Chapter 7 Case, the Chapter 11 Case moved forward from the beginning. The Debtor filed its schedules in the Chapter 11 Case and the interested parties, including the Bank, participated. Arrow Road, however, did not participate in the case. Seeking to proceed with the Foreclosure Action, the Bank filed a motion to lift the automatic stay in the Chapter 11 Case ("Lift Stay Motion") on April 21, 2010. The Debtor did not oppose the motion. Arrow Road received notice of the Lift Stay Motion but did not respond. On May 24, 2010, Judge Cox entered an Agreed Order of Relief From Automatic Stay, stating that the Bank is "hereby authorized to do any and all acts necessary and/or proper to enforce its right with respect to the [Property], including but not limited to, continuing the Foreclosure Action and sheriff's sale." The Chapter 11 Case was formally dismissed on June 8, 2010, and Arrow Road received notice of the dismissal.

On June 11, 2010, the Debtor filed a Motion to Dismiss the Chapter 7 Case. This was the first document filed in the two-month-old Chapter 7 Case and it specifically cited the fact that the Chapter 7 case was filed inadvertently and that Debtor's counsel attempted to terminate the filing while it was in progress but was unsuccessful. Arrow Road received notice of this Motion as well.

3

After the Chapter 11 Lift Stay Order and Motion to Dismiss the Chapter 7 Case, but before the Chapter 7 Case was formally dismissed, a sheriff's sale was conducted on the Property. The Bank, with a bid of $20 million, was the successful bidder. On June 16, 2010, the state court issued an Order Approving Foreclosure Sale, after which the Bank sold the Property to a third-party purchaser, who is now in possession of the Property.

On June 18, 2010, Judge Squires granted the Debtor's Motion to Dismiss the Chapter 7 Case. Arrow Road received notice of the dismissal.

**B. Procedural History**

On July 13, 2010, nearly one month after the Order Approving Foreclosure Sale, Arrow Road filed a Motion to Vacate Judgment in the Foreclosure Action ("Motion to Vacate"). Arrow Road argued, as it does here, that because the Chapter 7 Case was not dismissed at the time of the Foreclosure Sale, the automatic stay rendered the sale and subsequent sale to a third-party purchaser void *ab initio*. In response, the Bank immediately sought relief in the Bankruptcy Court, requesting that it amend and/or clarify its June 18, 2010 Order dismissing the Chapter 7 Case. The Bank argued that, pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9024 (which incorporates Federal Rule of Civil Procedure 60), the Bankruptcy Court should annul the Chapter 7 automatic stay, *nunc pro tunc,* to April 9, 2010, the date the bankruptcy cases were filed.

The Bankruptcy Court granted the Bank's Motion on August 12, 2010, retroactively annulling the automatic stay not to April 9 but rather to May 24, 2010, the

date of the Agreed Lift Stay Order in the Chapter 11 Case. Issuing his ruling from the bench, Judge Squires stated his findings:

> [I]f the first 7 was the inadvertent 7, and the same day a few minutes later the 11 was filed, the appropriate form of relief ought to be to annul the automatic stay that was issued in the 7 at the time of the filing of the petition. . . . It is clear that retroactive relief from the stay is the exception rather than the rule. And this unusual scenario, which I haven't seen exactly in this form present in this case, is one of those unusual situations where I think annulment is appropriate because it was clearly the intent of the debtor's counsel to file one case that was intended to be filed as an 11, stay relief was appropriately sought and received in that case, and everybody just forgot about the pending 7, which shouldn't have been there, and action should have been taken by debtor's counsel much sooner.

Bankr. Tr. 12-13. Judge Squires further explained that, "All I'm doing today is doing in the 7 what should have been done back when relief was obtained in the 11 as of the same date. They were filed on the same day. They got dismissed ten days or so apart. But this is my way of trying to balance the equities." Id. at 22.

On August 24, 2010, Arrow Road filed a Notice of Appeal in the Northern District of Illinois. The appeal is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Review

This Court has jurisdiction to review decisions of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). When adjudicating bankruptcy appeals, district courts are to apply a dual standard of review: the Bankruptcy Court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. Stamat v. Neary, 635 F.3d 974, 979 (7th Cir. 2011); Fed. R. Bankr. P. 8013. Under the clearly erroneous standard, "[i]f the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, we will not reverse its factual findings even if we would have weighed the

evidence differently." Stamat, 635 F.3d at 979 (citation and quotation omitted). When there are "two permissible views of the evidence, the [bankruptcy court's] choice between them cannot be clearly erroneous." In re Morris, 223 F.3d 548, 553 (7th Cir. 2000) (citations omitted).

The Bankruptcy Court's decision to annul the automatic stay pursuant to 11 U.S.C. § 362(d) "is committed to the discretion of the bankruptcy court and, therefore, we review the court's decision for an abuse of discretion." In re C & S Grain Co., Inc., 47 F.3d 233, 238 (7th Cir. 1995) (citing In re Boomgarden, 780 F.2d 657, 660 (7th Cir. 1985); see also Christian v. Citibank, F.S.B., 231 B.R. 288, 289 (N.D. Ill. 1999) (finding that a Bankruptcy Court's decision to annul the automatic stay "may be overturned only upon a showing of abuse of discretion").

The District Court reviews a Bankruptcy Court's grant or denial of relief under Federal Rule of Civil Procedure 60(b), incorporated in Bankruptcy Rule 9024, "under an extremely deferential abuse-of-discretion standard." Re v. Re, No. 09-3415, 2010 WL 4137433, at *1 (7th Cir. Oct. 20, 2010); Wells Fargo Fin. Leasing, Inc. v. Comdisco, Inc., No. 05-C-129, 2006 WL 1519324, at *1 (N.D. Ill. May 30, 2006). Because Rule 60(b) relief "is an extraordinary remedy and is granted only in exceptional circumstances, a [bankruptcy] court abuses its discretion only when no reasonable person could agree with the decision to [grant or] deny relief." Travelers Cas. & Sur. Co. v. Ockerlund (In re Ockerlund), No. 10 C 5738, 2011 WL 249456, at *3 (N.D. Ill. Jan. 25, 2011) (quoting Eskridge v. Cook Cnty., 577 F.3d 806, 809 (7th Cir. 2009) (alterations in original)). "In general terms, a court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no

evidence on which the court rationally could have relied." In re KMart Corp., 381 F.3d 709, 713 (7th Cir. 2004).

**B. The Decision of the Bankruptcy Court is Affirmed**

*1. The Bankruptcy Court's Annulment Order Was Not an Abuse of Discretion*

The Bank argues, and Arrow Road disputes, that the Annulment Order may be affirmed pursuant to 11 U.S.C. § 105(a) in conjunction with 11 U.S.C. § 362(d). Under § 105(a), bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the bankruptcy code]." Section 105(a) "grants broad powers to bankruptcy courts to implement the provisions of [the bankruptcy code] and to prevent an abuse of the bankruptcy process." In re Volpert, 110 F.3d 494, 500 (7th Cir. 1997). Yet, because § 105(a) is a "means to enforce the Code rather than an independent source of substantive authority," In re UAL Corp., 412 F.3d 775, 778 (7th Cir. 2005), a ruling pursuant to § 105(a) must "be exercised within the confines of the bankruptcy code," Gouveia v. Tazbir, 37 F.3d 295, 300 (7th Cir. 1994).

Therefore, in applying § 105(a) to this case, the Court must ask whether the Code contains a grant of authority by which the Bankruptcy Court may retroactively annul the automatic stay and, if so, whether the Bankruptcy Court abused its discretion in finding that the equities favor that result. For the reasons set forth below, the Court finds that § 362(d) provides the Bankruptcy Court with power to retroactively annul the automatic stay and the Bankruptcy Court did not abuse its discretion in finding that the equities favor retroactive relief. In short, the Debtor made a mistake in filing the Chapter 7 Case and Arrow Road knew it.

The automatic stay provision, § 362(a), provides for a nearly comprehensive stay of proceedings against the debtor and the debtor's property and has been described as one of the Code's fundamental elements of debtor protection. Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986). While orders issued in violation of the automatic stay provision "ordinarily are void," Mathews v. Rosene, 739 F.2d 249, 251 (7th Cir. 1984), the Bankruptcy Court has the power, under § 362(d), to grant relief from the stay by "terminating, annulling, modifying, or conditioning such stay . . . for cause." 11 U.S.C. § 362(d); see In re C & S Grain Co., Inc., 47 F.3d at 238 ("[A] court may grant a party relief from the stay if it finds that the moving party's interest in the property can be better protected or for any other cause the court finds to be worthy."). "'Cause' as used in § 362(d) has no clear definition and is determined on a case-by-case basis." Fernstrom Storage & Van Co., 938 F.2d 731, 735 (7th Cir. 1991) (citations and quotations omitted). Courts have utilized a variety of factors to determine whether "cause" exists in order to retroactively annul an automatic stay. See In re Wapotish, No. 07 B 71218, 2009 WL 1916965, at *1-2 (Bankr. N.D. Ill. July 2, 2009) (gathering cases and providing a list of the many (fifteen plus) factors courts have used to determine if cause exists to retroactively annul an automatic stay).

Courts in this District and throughout the country have held that § 362(d) permits bankruptcy courts to grant retroactive relief from the automatic stay. See, e.g., Christian, 231 B.R. at 289 (affirming Bankruptcy Court's decision to retroactively annul automatic stay pursuant to § 362(d)); In re Wilke, No. 10 B 04976, 2010 WL 2034525, at *6 (Bankr. N.D. Ill. May 20, 2010) (holding that § 362(d) provides bankruptcy courts with the "authority and discretion" to retroactively annul the automatic stay, allowing the

8

creditor to "proceed as if the bankruptcy had never been filed and the automatic stay [had] never been imposed"); Will v. Ford Motor Credit Co. (In re Will), 303 B.R. 357, 368 (Bankr. N.D. Ill. 2003) (finding that the court may "weigh equitable considerations" in deciding whether to retroactively annul the automatic stay); In re Syed, 238 B.R. 133, 144 (Bankr. N.D. Ill. 1999) ("[Bankruptcy courts have] wide latitude to grant relief from the automatic stay including the power to retroactively annul the stay."); Mitan v. Duval (In re Mitan), 573 F.3d 237, 245 (6th Cir. 2009) ("[Section 362(d)] expressly authorize[s] such retroactive orders by its use of the term 'annulling.'"); E. Refractories Co. Inc. v. Forty Eight Insulations Inc., 157 F.3d 169, 173 (2d Cir. 1998) ("This modification *nunc pro tunc* of an automatic stay is well within the powers that 11 U.S.C. § 362(d) confers upon bankruptcy courts."); Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 675 (11th Cir. 1984) ("The word 'annulling' in [§ 362(d)] evidently contemplates the power of bankruptcy courts to grant relief from the stay which has retroactive effect; otherwise its inclusion, next to 'terminating', would be superfluous.").

In deciding whether to annul an automatic stay in order to validate a state court foreclosure proceeding, bankruptcy courts in this District look to "whether the creditor who violated the stay did so willfully and whether the movant would be unfairly prejudiced by the enforcement of the stay." In re Will, 303 B.R. at 368.

Applying these factors, the Bankruptcy Court was well within its discretion in finding, first, that the Bank did not willfully violate the stay. After the Chapter 7 Case was mistakenly filed, no one appeared in the case and no schedules, statements or motions were filed. As the Bankruptcy Court explained, "basically what happened is the parties for a while forgot about the existence of this Chapter 7 case." Bankr. Tr. 7. The

9

Bank, for its part, did not proceed with the Foreclosure Action until its Lift Stay Motion was granted in the Chapter 11 Case, the only bankruptcy matter that the Debtor was actively litigating. As soon as the Bank recognized a technical violation of the automatic stay, it took quick action to correct the problem by moving to retroactively annul the stay. While forgetting about the Chapter 7 Case was no doubt a regrettable oversight, the Bankruptcy Court's determination that the Bank did not act in bad faith is supported by the record.

Nor did the Bankruptcy Court abuse its discretion in finding that the Bank would be unfairly prejudiced if the stay were to be enforced. Through its Motion to Vacate, Arrow Road seeks to void a $20 million foreclosure sale and subsequent sale to an alleged bona fide purchaser. Arrow Road claims prejudice because it complied with the Chapter 7 automatic stay and thus "lost its opportunity" to participate in the Foreclosure Action. The Bankruptcy Court, relying on the fact that Arrow Road was on notice in both cases, disagreed. The Bankruptcy Court's balancing of the equities is supported by the record.

First, Arrow Road received notice of both the Chapter 7 and Chapter 11 Cases, as well as notice of the Lift Stay Motion, which specifically asked for relief so that the Bank could continue the foreclosure process. At this point, Arrow Road had reason to know that foreclosure on the Property was imminent. Yet Arrow Road did not file an appearance or otherwise participate in the Foreclosure Action, Chapter 7 Case, or Chapter 11 Case, let alone respond to the Bank's Lift Stay Motion or file a motion of its own. Moreover, Arrow Road received notice of the Debtor's June 11, 2010 Motion to Dismiss the Chapter 7 Case, which explained in detail that the Chapter 7 Case was filed

inadvertently. At this point (if not before) Arrow Road knew or should have known that the Chapter 7 Case was mistakenly filed and was therefore not a legitimate proceeding. Despite receiving notice throughout the process, Arrow Road did not act until July 13, 2010, nearly one month after the foreclosure sale and subsequent sale to an alleged bona fide purchaser. Arrow Road had ample opportunity to protect its mechanic's lien throughout this process, yet did not do so.

Furthermore, the relief sought by Arrow Road would cause substantial prejudice to the independent third party purchaser. As the Bankruptcy Court explained, "we've got third-parties' interests impacted because you've got a third-party alleged [bona fide purchaser] out there screaming for clear title." Bankr. Tr. 9. This further counsels against an order voiding the foreclosure sale. See, e.g., Robinson v. Taylor (In re Robinson), 80 B.R. 455, 459 (Bankr. N.D. Ill. 1987) ("[V]oiding of a foreclosure sale is a harsh result, especially where the purchaser is a third party rather than the mortgagee."); In re Wapotish, 2009 WL 1916965, at *2 (listing "extent of any prejudice, including to bona fide purchaser" as a factor supporting retroactive annulment). On this record, the Bankruptcy Court did not abuse its discretion in finding that the "balance [of] the equities between the parties" favors the Bank. Bankr. Tr. 19.

The Bank is therefore correct that, pursuant to § 105(a) and § 362(d), the Bankruptcy Court had the authority to issue the Annulment Order. See, e.g., In re Mitan, 573 F.3d at 246 (holding that retroactive relief pursuant to §105(a) is proper because no statute prohibits such relief); First Sec. Bank of Idaho v. Ricks (In re Ricks), 26 B.R. 134, 137 (Bankr. Idaho 1983) ("[U]nder § 105, the [foreclosure] sale will be validated, *nunc pro tunc*, and held not void by such filing."); Mataragas v. Nat'l Banks of Greece (In re

Mataragas), Nos. 96 B 14287, 97 A 00646, 1997 WL 777254, at *2 (Bankr. N.D. Ill. Dec. 18, 1997) ("[T]his Court will use the powers granted under § 105(a) in conjunction with § 362(d) to sua sponte annul the automatic stay . . . ."). The Bankruptcy Court did not exceed its authority by amending the Chapter 7 Dismissal, *nun pro tunc*, to the date of the Agreed Lift Stay Order in the Chapter 11 Case.

### 2. *Federal Rule of Civil Procedure 60(b) Further Supports the Annulment Order*

The Bank also argues, and Arrow Road disputes, that the Annulment Order may be affirmed pursuant to Federal Rule of Civil Procedure 60(b)(1). The Bankruptcy Court, after finding that Rule 60(a) relief was not warranted because there was no mistake by the court or clerk, found that relief was warranted under Rule 60(b).

Rule 60(b)(1) provides for relief from a final judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect" and "attorney carelessness can constitute inadvertence or excusable neglect." U.S. v. Silva, No. 00-3597, 2001 WL 1497782, at *1 (7th Cir. Nov. 20, 2001). The determination is equitable in nature and requires the court to take "account of all relevant circumstances surrounding the party's omission . . . includ[ing] . . . the danger of prejudice to the debtor . . . and whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). Relief under Rule 60(b) is granted "only in exceptional circumstances," Eskridge v. Cook Cty., 577 F.3d 806, 809 (7th Cir. 2009), and appellate review of a bankruptcy court's decision in a 60(b) case is "deferential." Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd., Nos. 10-16666, 10-1915, 2011 WL 1775690, at * 4 (7th Cir. May 11, 2011).

Here, after noting that retroactive relief is "the exception rather than the rule," the Bankruptcy Court found that such relief was appropriate in light of the "unusual scenario" presented in this case. Bankr. Tr. 12. The Bankruptcy Court explained that the "papers make it clear, and even [the Debtor's] motion to dismiss makes it clear that this whole Chapter 7 case was filed as a mistake as a Chapter 7." Id. at 9. The Bankruptcy Court explicitly noted that the Bank did not act in bad faith and that, for the reasons set forth in Section B(1) above, "balanc[ing] the equities between the parties" favored annulment of the stay. Id. at 19. Based on the record and the representations of the parties and for the reasons set forth above, the Bankruptcy Court's finding that principles of equity weigh in favor of granting Rule 60(b) relief does not constitute an abuse of discretion.

Unpersuaded by Arrow Road's arguments, this Court concludes that the Bankruptcy Court's disposition in this matter was proper in all respects. The Bankruptcy Court therefore properly granted the Annulment Order, and this Court affirms that ruling.

## III. CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is affirmed.

IT IS SO ORDERED.

ENTER:

_Charles Norgle_
CHARLES RONALD NORGLE, Judge

United States District Court

DATED: June 2, 2011